UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

CRIMINAL ACTION

VERSUS

NO. 10-104-JJB-SCR

HENRY LAMONT JONES, ET AL

## RULING ON DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, MOTION TO SUPPRESS

This matter is before the Court on Defendant's motion (doc. 137) to dismiss, or, alternatively, to suppress illegally obtained evidence. The government has filed an opposition (doc 143). The Court held an evidentiary hearing on the motion. After the hearing, Defendant filed a brief in further support of his motion (doc. 185) to which the government has filed an opposition (doc. 188). This Court's jurisdiction exists pursuant to 28 U.S.C. § 1331.

On July 15, 2010, Defendant Henry Lamont Jones ("Jones") was charged with various crimes arising from his alleged role in a conspiracy to commit Medicare fraud (doc. 1). Prior to the indictment, Jones was subpoenaed to appear, testify, and produce records before a federal grand jury, which he did on three separate occasions (doc. 137, exhibits A, B and C).

On August 30, 2006, Jones testified as to the business practices of Unique Medical Solutions, Inc., one of the companies being investigated for Medicare fraud. At the hearing, United States Attorney Rene Salomon ("Salomon") advised Jones that "as a witness, [he had] the right to refuse to answer any

question, the truthful answer to which might incriminate [him]" and "the right to consult with a lawyer outside of the grand jury" (doc. 143, ex. A, at 4:22-25 and 5:1-3). At the hearing, Jones indicated that he understood these rights (*Id.* at 5:1-8).

On February 18, 2009, Jones again testified before the grand jury. At the hearing, Salomon again informed Jones that, "as a witness, [he had] the right to refuse to answer any question, the truthful answer to which might incriminate [him]" and "the right to consult with a lawyer outside this grand jury room" (doc. 143, ex. B, at 5:9-11, 13-14). Jones again indicated that he understood these rights (*Id.* at 5:12). Both prior to and during the hearing, Salomon also informed Jones that he was the "subject of inquiry," but not a "target of investigation" (*Id.* at 10:3-21, 98:8-12). Salomon explained that "[p]eople are targets of investigation when we've made up our mind that somebody needs to be charged or arrested and indicted." (*Id.* at 10:12-14). Salomon further explained that the government was trying to collect and examine facts "to determine if wrongdoing has happened" (*Id.* at 10:16-21). In response, Jones indicated that he understood the difference between the two statuses (*Id.* at 10:15 & 22). Shortly thereafter, Jones stopped the proceedings to consult his attorney, Christopher Alexander ("Alexander") (*Id.* at 15:4-14).

Finally, on March 4, 2009, on Alexander's recommendation, Jones again testified before the grand jury, was informed of his Fifth Amendment rights (doc. 143, ex. C at 4:3-5, 7-8) and was told that he and his company were the subjects

2

of "inquiry" and "investigation" and that "there remain[ed] the possibility that charges could arise" (*Id.* at 7:1-21). Jones again indicated that he understood his rights (*Id.* at 4:3-10, 5:22-7:24).

However, Alexander claims that, prior to the February 18 hearing, he spoke with Salomon about Jones' status, and that Salomon assured him Jones was "was not under investigation and that he did not foresee any reason why Mr. Jones would become a suspect in the federal probe" and that "Jones was a witness only, not a target or subject" (doc. 137, ex. D; doc. 183, 12:9-13:2). Salomon, on the other hand, claims that, he did not speak with Alexander until after the February 18 hearing, and that at all times, he instructed both Jones and Alexander that Jones was a "subject of inquiry" and that at no time did he discuss immunity with either party (doc. 175). On the basis of his discussion with Salomon, Alexander instructed Jones to cooperate with the government and testify at the grand jury proceedings (doc. 137, exhibit D). Moreover, when Jones spoke with Alexander immediately following the February 19 hearing, Alexander again told Jones to cooperate despite that Salomon had just informed Jones that he was a subject of inquiry (doc. 183, 36:1-10). In addition, during the course of the investigation the government ordered Jones not to change any of his business practices in order to prevent co-Defendant Bonnie Simmons from discovering that she was being investigated (doc. 137, p. 2). On the basis of his conversations with Alexander and Salomon's instructions, Jones concluded that he had been granted immunity (doc. 137, p. 2).

3

On April 28, 2010, a federal grand jury returned an indictment charging Jones with conspiracy to commit health care fraud and conspiracy to defraud the United States and receive and pay health care kickbacks.

Defendant requests that the Court dismiss the claims against him or suppress evidence of his grand jury testimony (doc. 137). In support of these requests, Defendant asserts that (1) he was implicitly granted immunity prior to testifying; (2) he was not informed of his Fifth Amendment rights; (3) and that his Fifth Amendment rights were violated.[1]

The government alleges that (1) Defendant was not granted immunity prior to testifying and that his subjective belief is immaterial; (2) Defendant was adequately and repeatedly informed of his Fifth Amendment rights; (3) Defendant's Fifth Amendment rights were not violated because he retained the right to, but never affirmatively exercised his right to, refuse to answer any questions which tended to incriminate him (doc. 143).

## I. Defendant was not granted immunity

Defendant asserts that he was implicitly granted immunity prior to testifying before the grand jury (doc. 137). The government asserts that it never granted immunity and that Defendant could not reasonably have believed that he had

---

[1] Defendant claims that his Fifth Amendment rights were violated because, at the time he testified, he had not been informed that he was under investigation and subjectively believed that he had been extended immunity. Defendant also asserts that the government, in bad faith, attempted to elicit testimony regarding Jones' own conduct in the alleged conspiracy. On these bases, Jones concluded that he had been "compelled" to provide incriminating testimony.

been granted immunity because he was repeatedly told that he was a "subject of inquiry" (doc. 143).

Non-prosecution agreements are interpreted according to principles of contract law. *United States v. Castaneda*, 162 F.3d 832, 835 (5th Cir. 1998). As such, a grant of immunity may be either express or implied. *United States v. Jimenez*, 256 F.3d 330, 347 (5th Cir. 2001). However, "the defendant bears the burden of proving that there was a mutual manifestation of assent—either verbally, or through conduct—to the agreement's essential terms." *Id.* In determining whether the defendant has met this burden, the court must consider both subjective and objective factors; the defendant's subjective believe alone is insufficient to establish immunity. *Id.* at 347, 348 n. 25.

The Court finds that Defendant could not have reasonably believed he received immunity. The government made it clear to Defendant on numerous occasions that he was a "subject of inquiry" and faced the possibility of prosecution.[2] At the suppression hearing Jones admitted that "[Salomon] never mentioned the word 'immunity'" (doc. 183, 65:15, 117:5). Moreover, Jones admits that he has no documentation of any discussions regarding immunity (doc. 183, 116:12-120:20). The following exchange is telling:

---

[2] At the February 18, 2009 hearing, Salomon informed Jones that he was the "subject of inquiry," but not a "target of investigation" and clearly explained the difference between the two (doc. 143, ex. B at 10:3-21). Salomon further explained that the government was trying to collect and examine facts "to determine if wrongdoing has happened" (*Id.* at 10:16-21). In response, Jones indicated that he understood the difference between the two statuses (*Id.* at 10:15 & 22).

At the March 4, 2009 hearing, Salomon again told Jones that he and his company were the subjects of "inquiry" and "investigation" and that "there remain[ed] the possibility that charges could arise" (doc. 143, ex. C, at 7:1-21). Jones again indicated that he understood his rights (*Id.* at 4:3-10, 5:22-7:24).

Q. Apart from your word and your word only, there is no evidence of your receipt of immunity in this case is there?

A. No, no mention about it.

Q. Okay. Actually, there is no evidence of you even being offered immunity except and apart from, like we said, your word.

A. No, no offer.

Q. Okay. And this is all in spite of three records in which there is no mention of that? Can we agree on that; correct?

A. Yes. That's correct.

(doc. 183, 120:14-24). Moreover, the Court finds that Salomon is the more credible witness as to the conversation between him and Alexander. Thus, the Court finds that Salomon never conveyed to Alexander that Jones was not a subject of inquiry, as Alexander claims. Therefore, Defendant simply has not provided any evidence demonstrating that he was ever offered immunity or that he could have reasonably believed the government had done so. Accordingly, the Court finds that Defendant has failed to establish he was granted immunity.

## II. Defendant was adequately advised of his Fifth Amendment rights

Defendant asserts that he was not informed of all of his Fifth Amendment rights prior to testifying before the grand jury and that his testimony must therefore be suppressed (doc. 183, 121:1-4). In support of his contention, Defendant notes that the Department of Justice Manual requires that a defendant be informed of all of his constitutional rights after being placed under oath in a

grand jury. The government asserts that Defendant was sufficiently advised of his rights and that he understood them (doc. 188).

Whether Defendant's Fifth Amendment rights were violated depends solely upon the rights granted by the United States Constitution; the Department of Justice's internal guidelines and policies do not inure to the benefit of individual defendants.[3] According to the Fifth Amendment, "[n]o person shall be compelled in any criminal case to be a witness against himself." The United States Supreme Court, however, has never required that the government give full *Miranda* warnings to all individuals testifying before a grand jury.[4] Instead, the Court has limited the reach of the *Miranda* requirements to situations in which an individual is in police custody. Moreover, the United States Courts of Appeals which have addressed the issue have also concluded that the government need not give *Miranda* warnings to individuals testifying before a grand jury and that minimally informative warnings generally are sufficient.[5]

---

[3] *See, e.g.*, *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) ("[I]t is clear that the USAM does not create any substantive or procedural rights."); *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990) (same); *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994) (same); *United States v. Wilson*, 413 F.3d 382, 389 (3rd Cir. 2005) (same); *United States v. Jackson*, 327 F.3d 273, 295 (4th Cir. 2003) (same); *U.S. v. Crooks*, 589 F.3d 173, 184 (5th Cir. 2009) (same).

[4] For example, in *United States v. Mandujano*, 425 U.S. 564, 578-79 (1976), the Court refused to suppress grand jury testimony of a putative defendant who has not given *Miranda* warnings prior to testifying. A plurality of the court determined that an individual need only be "Mirandized" when in police custody. *Id.* at 580. Two justices, concurring in the judgment, concluded that, though there may be some instances in which an individual testifying before a grand jury must be "Mirandized," an individual waives that right if informed that he is "subject to possible criminal prosecution . . ., that he has a constitutional right to refuse to answer any and all questions that may tend to incriminate him, and . . . the individual understood the nature of his situation and privilege prior to giving testimony." Furthermore, in *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984), the Court stated that it "has never held that [Miranda warnings] must be given to grand jury witnesses."

[5] *United States v. Myers*, 123 F.3d 350, 362 (6th Cir. 1997) (finding that an individual testifying before a grand jury need not be "Mirandized," and that, in any event, the individual was sufficiently informed of his

The Court finds that Defendant was sufficiently informed of his Fifth Amendment rights.  At the August 30, 2006 hearing, Salomon advised Jones that "as a witness, [he had] the right to refuse to answer any question, the truthful answer to which might incriminate [him]" and "the right to consult with a lawyer outside of the grand jury"  (doc. 143, ex. A, at 4:22-25 and 5:1-3).   Jones indicated that he understood these rights (*Id.* at 5:1-8).  At the February 18, 2009, hearing, Salomon again informed Jones that, "as a witness, [he had] the right to refuse to answer any question, the truthful answer to which might incriminate [him]" and "the right to consult with a lawyer outside this grand jury room" (doc. 143, ex. B, at 5:9-11, 13-14).  Jones again indicated that he understood these rights (*Id.* at 5:12).  Finally, on March 4, 2009, Jones again testified and was similarly informed of his Fifth Amendment rights (doc. 143, exhibit C at 4:3-5, 7-8) and once again indicated that he understood his rights (doc. 143, ex. C, 4:3-10, 5:22-7:24).  Accordingly, the Court finds that Defendant was sufficiently advised of his Fifth Amendment rights.

### III. Defendant's Fifth Amendment rights were not violated simply because he had to testify before the grand jury prior to being indicted

Defendant asserts that his "indictment should be quashed because he made incriminating statements to a grand jury prior to indictment" (doc. 137).

---

Fifth Amendment rights when told that he had the rights to an attorney and to refuse to answer any question which might incriminate him and that anything he said could be used against him); *United States v. Goodwin*, 57 F.3d 815, 817 (9th Cir. 1995) ("The key to [the defendant's] Fifth Amendment protection is that he not feel compelled to testify.  The record reflects that [he]  was more than adequately instructed that he was under no compulsion whatsoever to make any self-incriminating statements."); *Labbe v. Berman*, 621 F.2d 26, 29 (1st Cir. 1980) (holding that a suspect testifying at an inquest need not be "Mirandized" and that, nonetheless, he was adequately informed of his rights by his own attorney).

Defendant argues that (1) a witness may not be subpoenaed before a grand jury and later indicted by the grand jury; (2) he did not know and was not given proper notice that he was under investigation prior to testifying; and (3) the government subpoenaed him to provide information regarding *his own* participation in the alleged controversy, and not the conduct of Unique Medical Solutions, Inc.'s owner, Nnata Ngari.

The Fifth Amendment does not prohibit the government from subpoenaing a witness to testify before a grand jury, and then later indicting that witness by the same grand jury. *United States v. Dionisio*, 410 U.S. 1, 10 (1973). Moreover, the Fifth Amendment does not require that a grand jury witness be warned that he is the potential target of a grand jury investigation. *United States v. Washington*, 431 U.S. 181, 189 (1977).[6] This is so because a witness retains and is adequately protected by the Fifth Amendment privilege to refuse to answer any question which may tend to incriminate him. *Mulloney v. United States*, 79 F.2d 566 (1st Cir. 1935).

---

[6] In Washington, the Court stated:

> [W]e do not understand what constitutional disadvantage a failure to give potential defendant warnings could possibly inflict on a grand jury witness, whether or not he has received other warnings. It is firmly settled that the prospect of being indicted does not entitle a witness to commit perjury, and witnesses who are not grand jury targets are protected from compulsory self-incrimination to the same extent as those who are. Because target witness status neither enlarges nor diminishes the constitutional protection against compelled self-incrimination, potential-defendant warnings add nothing of value to protection of Fifth Amendment rights.

*Id.*

In addition, once summoned, the witness can be required to answer any and all questions, subject to the witness's Fifth Amendment right to refuse to answer questions that may tend to incriminate him. *Mandujano*, 425 U.S. at 574. However, the witness must affirmatively invoke the privilege against self-incrimination "as the 'Constitution does not forbid the asking of criminative questions.'" *Id; see also United States v. Monia*, 317 U.S. 424, 427 (1943) (stating that if the witness "desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within meaning of the Amendment").

The Court finds that Defendant has failed to point to any evidence establishing that (1) he was subpoenaed to elicit information about his own—and not Nnata Ngari's—conduct, or (2) that he was actually under investigation at the time he testified. Even if Defendant had been under investigation at the time he testified, his Fifth Amendment rights were not violated by the government's failure to inform him of that fact. *Id.* Moreover, Defendant could be compelled to testify before a grand jury, and later be subpoenaed by the same grand jury, without violating his Fifth Amendment rights. *Dionisio*, 410 U.S. at 10.

In addition, the Court finds that Defendant waived his rights under the Fifth Amendment. At each hearing, Salomon advised Defendant of his right to refuse to answer any question which may tend to incriminate him and each time Defendant indicated that he understood his rights (doc. 143, ex. A, at 4:22-25 and 5:1-3; *Id.*, ex. B, at 5:9-11, 13-14; *Id.*, ex. C at 4:3-5, 7-8). Nonetheless,

Defendant continued to testify, exercised his Fifth Amendment right to consult with counsel, and actually resumed testimony on the advice of counsel (doc. 143, ex. B). Therefore, the Court finds that Defendant was not "compelled" to give incriminating testimony, and so there is no basis upon which to quash the indictment or suppress the testimony.

## CONCLUSION

Accordingly, the Court hereby DENIES Defendant's motion (doc. 137) to dismiss or suppress.

Signed in Baton Rouge, Louisiana this 18th day of February, 2011.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**